UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61984-CIV-COHN/SELTZER

CONSENT CASE

JOHN MANCUSO, on behalf of himself
and all others similarly situated,

      Plaintiff,

vs.

FLORIDA METROPOLITAN UNIVERSITY, INC.
EVEREST UNIVERSITY, and CORINTHIAN
COLLEGES, INC.

      Defendants.
_____/

## ORDER

THIS CAUSE is before the Court on Plaintiff's Motion to Permit Court Supervised

Notice Advising Similarly Situated Individuals of Their Opt-in Rights Pursuant to 29 U.S.C.

§ 216(B) (DE 3) and the matter having been referred to the undersigned pursuant to the

consent of the parties and the Court being sufficiently advised, it is hereby ORDERED that

the Motion is GRANTED in part for the reasons set forth below.

## BACKGROUND

Plaintiff John Mancuso is employed by Defendants, Florida Metropolitan University,

Inc., Everest University, and Corinthian Colleges, Inc., as an admissions representative;

he works at the Pompano Beach campus of Everest University.  Mancuso Aff. ¶ 5, Ex. A

(DE 3);Clem Decl. ¶ 4 (DE 31-1).  As alleged in the Complaint, Defendants "operate[] a

business offering educational classes and degrees."  Complaint ¶ 6 (DE 1).  Plaintiff

alleges that he and other similarly situated current or former employees of Defendants "were not paid time and one-half of their regular pay for all overtime hours worked beginning on or after November, 2006, in violation of the Fair Labor Standards Act ("FLSA)." Id. at ¶ 8. Plaintiff now moves the Court to conditionally certify a collective action and to order notice to facilitate opt-in plaintiffs to join in this action. The prospective opt-in plaintiffs are former and current admissions representatives employed by Defendants at the Pompano Beach, Florida campus from December 17, 2006, to December 17, 2009.[1]

<u>LAW AND ANALYSIS</u>

Title 29 U.S.C. § 216(b) permits a plaintiff to bring a collective action on behalf of himself and others similarly situated; the similarly situated plaintiffs must affirmatively opt in to the collective action. See Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996). A prospective opt-in plaintiff must give "consent in writing to become such a party and such consent [must be] filed in the court where such action in brought." 29 U.S.C. § 216(b). In managing collective actions, courts have the discretion to authorize a notice of opt-in rights to prospective members of the class. Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 169-74 (1989); Dybach v. Florida Dep't of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Before authorizing such notice, however, a court "should satisfy

---

[1] Plaintiff originally defined the class as similarly situated employees and former employees located in Florida. In his Reply, Plaintiff limited the prospective class to those at the Everest University Pompano Beach, Florida campus at which he is employed. According to Shane Clem, the Regional Vice President of Corinthian Colleges, Inc., there are currently 23 admissions representatives (including Plaintiff) working at that location. Clem Decl. ¶ 6 (DE 31-1).

itself that there are other employees of the defendant-employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions."  Id. at 1567-68.

The Eleventh Circuit has endorsed a two-stage procedure that courts may (but are not required to) use to determine whether to certify a collective action.  In Hipp v. Liberty National Life Insurance Co., 252 F.3d 1208 (11th Cir. 2001), the court described this "effective tool for district courts to use in managing" collective actions:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members.  Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class.  If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in."  The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial.  If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives – i.e. the original plaintiffs – proceed to trial on their individual claims.

Id. at 1218 (quoting Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir.1995)).

The representative plaintiff bears the burden of demonstrating that a collective action

should be conditionally certified.  Id. at 1219.  Although this burden is not a heavy one, a plaintiff must make "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary."  Id. (quoting Grayson, 79 F.3d at 1097).

The instant motion implicates the first stage of the analysis; Plaintiff now only seeks leave to send notice to potential class members advising of their right to opt-in to this action.  Hence, the Court will look to the pleadings and affidavits to determine whether there is sufficient evidence in the record demonstrating that there are other current or former employees of Defendants that desire to join in this action and whether the putative class members are similarly situated to the Representative Plaintiff.

In support of his request, Plaintiff has submitted his own affidavit and the affidavits of three former employees of Defendants – Laurie Klazer, Andrew Heidlebaugh, and Johanne Benjamin – together with each former employee's "Consent to File Action," giving their consent to become a party plaintiff herein.[2]  In addition, (presumably) another employee or former employee, Eric McElhinly, has filed in the record a "Consent to File Action" without a supporting affidavit.  Although the Eleventh Circuit has never quantified the number of similarly situated employees that a plaintiff must identify to gain conditional certification, other courts in this District have found that the same number of (or even fewer) as that identified here by Plaintiff is sufficient.  See, e.g., Wynder v. Applied Card Systems, Inc., No. 09-80004-CIV, 2009 WL 3255585, at *3 (S.D. Fla. Oct. 7, 2009) (Marra,

_____

[2]  In their affidavits, the opt-in plaintiffs each state that they know other admission representatives working at the Pompano Beach campus that would be willing to join this action if they had the opportunity to do so and/or if they could be assured there would be no retribution from Defendants.

4

J.) (conditional certification granted based on named affidavit of named plaintiff and one other putative class member); Guerra v. Big Johnson Concert Pumping, Inc., No. 05-14237-CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006) (Martinez, J.) (conditional certification granted based on affidavits of named plaintiff and one opt-in plaintiff); Reyes v. Carnival Corp., No. 04-21861-CIV, 2005 WL 4891058, at *6 (S.D. Fla. May 25, 2005) (Gold, J.) (conditional certification granted based on affidavit of named plaintiff and two opt-in plaintiffs).  Accordingly, the Court finds Plaintiff's submissions are sufficient to demonstrate that others desire to join in this action.

The Court must next determine whether the putative class members are similarly situated to Plaintiff with respect to their job requirements and their pay provisions.  The affidavits submitted herein establish that Plaintiff and the opt-in plaintiffs all worked at the Pompano Beach (Florida) campus as admission representatives[3] during the relevant time periods.  All opt-in plaintiffs indicated that, although occasionally paid overtime, they frequently worked more than 40 hours a week without overtime pay.  It further appears that at least two of the opt-in plaintiffs were supervised by the same individuals as Plaintiff.

---

[3] Defendants argue that Plaintiff and the opt-in plaintiffs are not similarly situated because they all do not have the same job title.  In their affidavits, opt-in plaintiffs Heidlebaugh and Klazer aver that they were employed as an Admissions Representative. Although opt-in plaintiff Benjamin states that he was employed as a Campus Admissions Representative, he further states that he had the same job responsibilities as Plaintiff Mancuso.  Additionally, the Everest University "Florida Adult Admissions Representative Compensation Program – Minimum Core Competencies of Performance" submitted by Plaintiff identifies six levels of admission representatives. However, the job responsibilities are the same for all six levels, save for the minimum "starts" each level is responsible for generating.  A "start" refers to a student entering the university to begin taking classes. Moreover, at the notice stage, plaintiffs "need only show that their positions are similar, not identical, to the positions held by the putative class members." Grayson, 79 F.3d at 1096.

In his Reply, Plaintiff summarized his March 3, 2010 deposition testimony with respect to the alleged FLSA violations:

1.  Defendants gave "Fran Cards" in lieu of paying overtime.  If Plaintiff worked more than forty (40) hours, Defendants would give a "Fran Card" which represented the number of overtime hours.  [Plaintiff] could use the "Fran Card" during a subsequent pay period as a substitution for regularly worked hours, however, Defendants would not compensate Plaintiff at an overtime rate for their overtime hours.

2.  Plaintiff was repeatedly pressured by his supervisors, and the President of the school, Dr. Ilia Martin to "do what you've got to do to make your numbers," referring to achieving Defendants' sales goals.  However, Plaintiff would also be advised to "put forty hours on his time sheets."

3.  Plaintiff has had conversations with his most recent supervisor, Leslie Greer, "almost every pay period" regarding why he was not being paid overtime.  Despite these conversations, Plaintiff was advised that he would not be paid his overtime, but was still held to achieving all of his sales goals.

4.  The most accurate recording of Plaintiff's hours worked are handwritten sign in sheets which Plaintiff would fill out upon entering Defendants' office on a daily basis. Plaintiff also testified that the computer generated time cards only reflect an accurate number of hours worked during the limited number of weeks the Defendants authorized overtime pay.

Reply at 4 (DE 38).

The affidavits of the opt-in plaintiffs relate similar types of (alleged) FLSA violations. Heidlebaugh avers his supervisors repeatedly told him to do whatever was necessary to get the job done; yet, he often was not paid for overtime hours.  He additionally states that

his immediate supervisor, Fran Heaston, repeatedly instructed him to remove overtime hours from his time card as he would not be paid for those hours.  According to Heidlebaugh, his computerized time sheets did not accurately represent the full amount of hours he had worked and even his handwritten sign-in sheets did not always account for all his hours because he was sometimes required to fill in the time sheets prior to the end of the pay period.  Heidlebaugh was also given "Fran cards" in lieu of being paid for overtime hours.

In her affidavit, Klazer avers that when she advised her immediate supervisor, Martin Levert, that she was working overtime, he instructed her to log only 40 hours. Supervisors Levert and Heaston told Klazer that she needed to do whatever was necessary to take care of business and meet her sales goal; yet, the supervisors also told her she would not be paid overtime. Klazer too avers that her computerized time sheets do not accurately represent the hours she worked and that her handwritten sign-in sheets were not always accurate due to being required to fill out the sign-in sheets prior to the end of the pay period.

So too, Benjamin avers that he was advised by supervisors Heaston and Levert that even if he worked more than 40 hours a week, he was not to log any hours in excess of that number on his time card.  The supervisors, however, simultaneously and repeatedly told him he was to continue to work as many hours as necessary to meet his sales objectives.  Benjamin was also given Fran Cards in lieu of overtime pay.

Based on this evidence, the Court finds that Plaintiff has meet the lenient burden at this notice stage of showing that he and the opt-in plaintiffs are similarly situated for the

purpose of conditional certification.

<u>FORM OF NOTICE</u>

Plaintiff has submitted a proposed "Notification to Potential Class Members." (DE 38-6). Defendants have raised several objections to the form of the Notice, including the date from which a three-year period should be measured, the inclusion of language indicating that the Notice has been approved by the Court, the inclusion of the number of individuals who have already opted-in, and the inclusion of the statement encouraging potential plaintiffs to contact Plaintiff's counsel. Additionally, Defendants argue that the Notice should disclose the identity of Defendants' counsel, disclose the requirement of the opt-in plaintiffs' participation in this action, and disclose the possibility that the opt-in plaintiffs may be liable for Defendants' costs if they are unsuccessful on the merits of their claims. Finally, Defendants argue that the Notice should not be posted at the Pompano Beach campus. Because Defendants first raised these objections in their Surreply, Plaintiff has not had an opportunity to address them and, therefore, the Court will not now decide the form of the Notice to be sent to potential class members. Instead, the Court will require the parties to confer and attempt to agree on the language to be used in the Notice. And if the parties cannot agree, then the Court will permit Plaintiff to address Defendant's objections.

Based on the foregoing, it is hereby ORDERED as follows:

1.     Plaintiff's Motion to Permit Court Supervised Notice Advising Similarly Situated Individuals of Their Opt-in Rights Pursuant to 29 U.S.C. § 216(B) (DE 3) is GRANTED to the extent that it requests that the Court conditionally certify a collective

action and order notice be give to facilitate opt-in plaintiffs to join in this action.   The Court will defer ruling on the form of the notice to be given to potential opt-in plaintiffs.

2.      On or before June 30, 2010, counsel for the parties shall confer in person or by telephone in a good faith attempt to agree on the form of the Notice and Consent to Become a Party Plaintiff.  If the parties are able to reach agreement, they shall promptly submit the agreed Notice and Consent to the Court for approval.  If the parties are not able to agree on the proposed forms, then on or before July 12, 2010, Plaintiff shall file a memorandum that addresses Defendants' arguments with respect to the Notice and that identifies any objections the parties have resolved.

DONE AND ORDERED in Fort Lauderdale, Florida, this 24th day of June 2010.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

All counsel of record