UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61984-CIV-COHN/SELTZER

CONSENT CASE

JOHN MANCUSO, on behalf of himself
and all others similarly situated,

    Plaintiff,

vs.

FLORIDA METROPOLITAN UNIVERSITY, INC.,
EVEREST UNIVERSITY, and CORINTHIAN
COLLEGES, INC.,

    Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTION TO EXPAND CLASS

THIS CAUSE is before the Court on Plaintiff's Motion to Expand the Scope of Class Notification (DE 74) and was referred to the undersigned pursuant to the consent of the parties.

Pursuant to the Fair Labor Standards Act ("FLSA"), Plaintiff John Mancuso brings this collective action on behalf of himself and all others similarly situated, contending that Defendants Florida Metropolitan University, Inc., and Corinthian Colleges, Inc. failed to pay overtime wages for work in excess of 40 hours per week. On the same day he filed his Complaint, Plaintiff also filed a Motion to Permit Court-Supervised Notice Advising Similarly Situated Individuals of their Opt-In Rights Pursuant to 29 U.S.C. § 216(b) (DE 3); he requested that notice be sent to all similarly situated current and former employees in the state of Florida working at Florida Metropolitan University, Inc., Everest University, and Corinthian Colleges, Inc. In his Reply Memorandum in support of that Motion, Plaintiff

narrowed his proposed class to current and former admissions representatives employed at Defendants' Pompano Beach (Florida) campus (where Plaintiff is employed) from December 17, 2006, to December 17, 2009.  Reply at 6 (DE 38).  For purposes of conditional certification, this Court determined that there were other similarly-situated admission representatives who were or had been employed at Defendants' Pompano Beach campus and who desired to join this action as party plaintiffs. Accordingly, on June 24, 2010, the Court granted Plaintiff's Motion, conditionally certified the class as proposed by Plaintiff, and authorized notice to be sent to those admission representative employed at the Pompano Beach campus from December 17, 2006, to December 17, 2009.[1]  See Order (DE 65).

The parties have engaged in class discovery.  Defendants have served written discovery requests and have deposed Plaintiff and the Opt-In Plaintiffs employed at the Pompano Beach campus who have (to date) consented to join this action.  And Plaintiff has served written discovery requests on Defendants and deposed several of Defendants' employees.  Plaintiff, however, has not yet sent Notice to the prospective class members. At the time the Court ruled on Plaintiff's Motion to Permit Court-Supervised Notice, the parties could not agree on the form of the notice to be sent; the Court, therefore, invited additional briefing on the issue.  Before the Court could determine the proper form of notice, however, Plaintiff filed the instant Motion, requesting that the Court greatly expand the scope of the conditionally certified class and authorize notice to Defendants'

---

[1] At that time, there were 23 admissions representatives employed at the Pompano Beach campus.  See Declaration of Shane Clem, ¶ 6 (DE 31-1).  In addition to Plaintiff, four admissions representatives formerly employed at the Pompano Beach campus have filed consents to opt-in to this action, one of whom has since withdrawn her consent.

admissions representatives nationwide. According to Plaintiff, Defendants operate approximately 100 campuses in the United States. Plaintiff estimates the total membership of the newly proposed class at between 2,000 and 4,000.

Plaintiff argues that a nationwide class of similarly situated admissions representatives exists. More specifically, Plaintiff contends that the job duties of all Defendants' admissions representatives are identical and that Defendants have systemically denied admissions representatives nationwide their full overtime pay. With respect to job duties, Plaintiff submits an excerpt from the deposition transcript of Leslie Greer, a Director of Admissions at the Pompano Beach campus (DE 74-1). Greer testified to the various duties of the 10 admissions representatives she supervises at the Pompano Beach campus. These duties include, *inter alia,* recruiting and enrolling students, guiding new students through the enrollment process, assisting prospective students in completing enrollment forms, and assessing the students' unique skills and interests. In addition, Plaintiff submits copies of what appear to be Defendants' websites (dated July 14, 2010) showing that they seek to hire admissions representatives on 16 campuses in 12 states across the country (DE 74-2); the job duties for these admissions representatives include many of the same duties for the Pompano Beach admissions representatives.

In support of his argument that Defendants' overtime violations are substantially similar nationwide, Plaintiff submits the affidavits of 5 former and current admissions representatives who have given their consent to opt- in to this action (DE 72-1 through 72-8, 73, 86); these 5 admissions representatives are employed at 3 of Defendants' 100 campuses. Excepting campus location, employment dates, and respective supervisors,

these affidavits are largely identical to one another.[2]  Each affiant averred that the admissions representative position is a high-pressure sales job for which their supervisors had instructed them to do "whatever it took necessary to get the job done to achieve our sales quota." According to these admissions representatives, meeting their sales quotas required that they work many hours, including week-ends; yet, their supervisors advised them they would not be paid overtime compensation even if they worked more than 40 hours per week.  The admissions representatives further averred that at least some supervisors instructed them that because overtime would not be paid, they were not to record overtime hours on their time sheets.  And if more than 40 hours per week had been recorded, those supervisors asked them to remove the overtime hours from their time sheets.  According to these admissions representatives, neither their pay stubs nor their time sheets accurately reflect the total hours they worked.  Further, these five admissions representatives aver that Defendants never, or only occasionally, paid them for overtime hours.[3]

Similarly, at his deposition, Plaintiff testified to FLSA violations that he allegedly experienced:  (1) he was pressured by his supervisors to "do what it takes to make your numbers"; (2) he was advised to record no more than 40 hours per week on his time

---

[2] In support of his original Motion to Permit Court Supervised Notice, Plaintiff submitted the affidavit of three admissions representatives employed at the Pompano Beach campus; these affidavits are substantially similar to the five new affidavits submitted.

[3] Based on conversations with other admissions representatives with whom they worked, these admissions representatives also stated that they were aware that others were also not paid overtime compensation.  They opined that others would be willing to join this lawsuit if they could be assured there would be no retribution from Defendants for their participation.

sheets; (3) his supervisor informed him he would not be paid for overtime hours; and (4) his time cards did not accurately reflect the hours he actually worked.  In addition, Plaintiff testified that his supervisor would give him "Fran Cards" in lieu of payment for overtime compensation.  According to Plaintiff, "Fran Cards" reflected the number of overtime hours worked and during a subsequent pay period could be substituted for regularly worked hours.  Only one of the affidavits Plaintiff now submits in support of the instant Motion refers to the use of a similar method to avoid paying overtime compensation.  That affidavit, submitted by an admissions representative employed at Defendants' North Miami Beach campus, stated that, instead of paying overtime compensation, her immediate supervisor, Laurie Friedman, would give "Laurie Hours" as comp time; these hours could be used in a subsequent pay period if the sales quota for that period had been met.[4]

In addition, Plaintiff submits the sworn declarations of two former admissions representatives who had been employed by Defendant Corinthian Colleges, Inc., and Corinthian Colleges Schools, Inc., d/b/a Olympia College, at the Chicago Loop campus (DE 74-3, 74-4).  These former admissions representations are currently plaintiffs in an FLSA collective action pending in the United States District Court for the Northern District of Illinois, Madden v. Corinthian Colleges, Inc., et al., Case No. 1:08-cv-06623.  They declare that their immediate supervisors discouraged them from recording overtime hours on their time sheets, often citing "the budget" or "company policy" as justification for not reporting or paying overtime.  The supervisors also would encourage or require activities, such as attendance at twice weekly meetings, which would result in the admissions

---

[4] Laurie Friedman, who allegedly issued the "Laurie Hours" was formerly an assistant to Plaintiff's supervisor, Fran Heston, who allegedly issued the "Fran Cards."

representatives working in excess of 40 hours a week. According to these two admissions representatives, the practice of discouraging the reporting of overtime hours resulted in time sheet inaccuracies and the lack of overtime compensation.

Although a plaintiff "seeking certification for a company-wide class action should not be required to collect specific violations from each [company] location or from each state before seeking authorization to provide notice to employees for all locations," Kelley v. Bluegreen Corp., 256 F.R.D. 626, 631 (W.D. Wis. 2009), this Court does not find that 8 affidavits from admissions representatives (who seek to join this action) at only 5 of Defendants' 100 campuses (together with Plaintiff's deposition testimony) are sufficient to support certification of a nationwide class.[5] Furthermore, Plaintiff has not shown how (on these facts) a nationwide collective action would result in judicial economy. This is not an "exemption " case in which a legal argument common to all representative would be made; rather, it is an "off the clock" case, in which the representatives' circumstances vary.[6]

---

[5] This Court previously found that the affidavits of three admissions representatives, together with Plaintiff's deposition testimony, was sufficient to conditionally certify a collective action. However, the class that was being by Plaintiff was limited to admissions representatives at only one of Defendants' campuses and the number of putative class members was far smaller than the 2,000 to 4,000 putative members of the class Plaintiff now seeks to have the Court certify; the Pompano Beach campus currently employs only 23 admission representatives. Moreover, this litigation has moved beyond the first stage of Hipp's two-tier analysis. See Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208 (11th Cir. 2001). The Court has already certified the limited class that Plaintiff requested and the parties have engaged in substantial discovery. The Court, therefore, believes that a more exacting scrutiny is warranted.

[6] As one has court observed: "The "job classification" cases in which exempt employees challenged their exempt status are much more amenable to collective treatment because there the plaintiffs are challenging class-wide policies regarding job classification, and evaluation of the plaintiffs' claims depend on common proof." Castle v. Wells Fargo Financial, Inc., No. C 06-4347 SI, 2008 WL 495705, at *6 (N.D. Cal. Feb. 20, 2008) (denying certification of a nationwide FLSA collective action where the plaintiffs had

Although Plaintiff contends that he has clearly shown a common policy or scheme by Defendants "to defraud [their] admissions representatives from the full amount of the overtime pay."[7] This Court does not agree that he has made such a showing. Defendant Corinthian Colleges, Inc., for example, has written overtime and time records policies, which are set forth in the Employee Handbook and which expressly prohibit the specific activity alleged. See Clem Decl. (DE 31-1).[8] The overtime policy provides, in part:

> All non-exempt employees qualify for overtime pay in compliance with applicable laws governing overtime pay. Non-exempt employees must not work overtime unless authorized in advance by [their] supervisor. Non-exempt employees may not schedule or work overtime hours without their supervisor's advance knowledge and authorization. Non-exempt employees MUST be paid overtime wages whenever required by applicable wage and hour laws; employees who work overtime CANNOT be given "comp time" or "time off" instead of being paid overtime wages. . . . If a supervisor or anyone else instructs you not to report worked overtime hours on your

---

submitted 24 declarations of putative class members in 8 states who were employed at 28 of the defendant's 1000 branch offices; court found averments that the employees were not paid for all overtime hours, that the managers pressured them not to record overtime hours, the managers altered the time records that reflected overtime hours, and the managers offered "flex time" in lieu of overtime compensation were insufficient to demonstrate a nationwide common policy or practice).

[7] "Although the existence of a common policy or plan is not a mandatory requirement in the Eleventh Circuit for conditional certification, nonetheless, the existence of a common policy or plan is relevant to the Court's exercise of its discretion in granting conditional certification because the underlying rationale for granting a collective action is to preserve judicial economy. Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." Robinson v. Dolgencorp, Inc., No. 5:06-cv-122-Oc-10GRJ, 2006 WL 3360944, at *6 (M.D. Fla. Nov. 13, 2006) (footnotes and internal quotation marks omitted).

[8] Defendants submitted the Declaration of Shane Clem in opposition to Plaintiff's original Motion to Permit Court-Supervised Notice, and therefore, his averments pertain only to Defendants' 15 Florida campuses. The Court, however, has no reason to believe that the polices are different nationwide.

> time sheet, or refuses to pay you overtime wages to which you are legally entitled, you must immediately report that individual to Human Resources. The Company prohibits anyone from taking retaliatory action against you for doing so.

Clem Decl., ¶ 8 (DE 31-1). And the time record policy provides, in part:

> Employees are responsible for accurately recording their own hours worked and must not falsify records. The Company does not require you to sign an inaccurate time record, even if your supervisor orders you to do so. If a supervisor or any other Company employee urges you to sign an inaccurate time record you must immediately report that employee to Human Resources, and the Company prohibits anyone from taking any retaliatory action against you for doing so.

Clem Decl., ¶ 7 (DE 31-1).[9]

Furthermore, work schedule management of Defendants' employees is highly decenralized. Corinthian Colleges, Inc.'s Regional Vice President Shane Clem avers:

> Each school and each campus has its own management structure. Each campus employs managers who set the work schedules for admissions representatives, approve deviations from those schedules, and train admissions representatives on their job responsibilities, including the proper reporting of overtime hours and the company's recognized obligation to pay for all overtime hours worked. Management of work schedules is localized to the campus and ultimately controlled by the individual supervisor.

Clem Decl., ¶ 6 (DE 31-9).

Because Plaintiff has failed to demonstrate through the affidavits submitted (or otherwise) that Defendants authorized, condoned, or even were aware of its supervisors'

---

[9] The Court recognizes, as did the court in <u>Madden v. Corinthian Colleges, Inc., et al</u>., Case No. 1:08-cv-06623 (M.D. Fla. Dec. 8, 2009), that "employers are unlikely to put admittedly unlawful polices into writing." Order at 4 (DE 38-1). The Court merely refeferences Defendants' policies to demonstrate the unmanageability of trying this case as a nationwide collective action.

conduct with respect to non-payment of overtime hours, the parties would be required to take discovery from hundreds of admissions representatives' immediate supervisors and from multiple corporate representatives across the country to demonstrate that Defendants have an informal, unwritten policy of not paying overtime wages. Against the backdrop of Defendants' written overtime and time records policies, such far-reaching discovery would render a nationwide collective action inefficient. At this (relatively advanced) stage of the litigation, the Court, therefore, declines to exercise its discretion to conditionally certify a nationwide class. Accordingly, Plaintiff's Motion to Expand the Scope of Class Notification (DE 74) is DENIED.

As the affidavits of Opt-in Plaintiffs Cindy Blazer, Gillene Edwards, Thomas Bostic, Kevin Davis, and Kathleen Dycus reflect that they worked at campuses other than Defendants' Pompano Beach campus, they are not members of the class conditionally certified by the Court. The Clerk of the Court, therefore, is directed to terminate these individuals as party plaintiffs herein.

DONE AND ORDERED in Fort Lauderdale, Florida, this 16th day of September 2010.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

All counsel of record